FILED

# United States District Court
# Northern District of Alabama
# Southern Division

03 APR 15 PM 1: 12

U.S. DISTRICT COURT
N.D. OF ALABAMA

| | | |
|---|---|---|
| Phillip Norton, | ] | |
| | ] | |
| Plaintiff(s), | ] | |
| | ] | |
| vs. | ] | CV-99-BE-0303-S |
| | ] | |
| East Penn Manufacturing Company, Inc., | ] | |
| | ] | |
| | ] | |
| Defendant(s). | ] | |

**ENTERED** *pc*

APR 15 2003

## Memorandum of Opinion

### I.    Introduction.

The court has for its consideration several motions filed by defendants East Penn

Manufacturing Company, Inc. ("East Penn") and American Battery Company ("American

Battery"). The plaintiff, Phillip Norton originally filed suit in Jefferson County Circuit Court

for relief on grounds of violation of the Alabama Extended Manufacturers Liability Doctrine

(AEMLD), negligent or wanton design, negligent or wanton failure to warn, breach of

contract, and breach of express and implied warranty of merchantability, due to injuries he

sustained when his car's battery exploded. (Doc. #1). The case was removed to federal

court on February 10, 1999. (Doc. #1). Three motions are presently pending before the

court: (1) defendant East Penn's motion for partial summary judgment on the issues of

failure to warn; breach of express warranty; and breach of implied warranty of

merchantability; (2) defendant East Penn's motion to exclude evidence or alternatively for

a *Daubert* hearing regarding plaintiff's expert witness (Doc. #81); and (3) defendant

American Battery's motion for partial summary judgment (joining the other motions filed

*101*

by East Penn) (Doc. #84). The issues have been briefed by both parties and, upon due consideration, the court finds that the motions for partial summary judgment are due to be granted and the motions to exclude the plaintiff's expert's testimony or for a *Daubert* hearing are due to be denied.  Therefore the only issues the court will address at trial are whether the defendants are liable for negligent or wanton design, breach of contract, and violations of the AEMLD.

## II.    Facts.

The plaintiff is a resident of the State of Alabama.  The plaintiff is suing for injuries caused by a car battery that was manufactured by East Penn and American Battery.  East Penn is a corporation organized under the laws of Pennsylvania with its principal place of business in Pennsylvania, and American Battery is a Florida corporation with its principal place of business in Florida.

The plaintiff purchased a used 1987 Nissan Sentra from a friend. On June 4, 1997, Norton raised the hood of the car containing the subject battery, and the battery exploded. This explosion projected acid into his eyes and injured them.  The battery contained a warning that was located on top of the battery and existed at the time of this accident. The plaintiff had considerable experience with automobiles; he had replaced batteries in vehicles 40 to 50 times, and was familiar with and had previously read the warnings the batteries contained.

## III.    Standard

When a district court reviews a motion for summary judgment under Federal Rules of Civil Procedure 56, it must determine two things: (1) whether any genuine issues of

material fact exist; and, if not, (2) whether the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56 (c).  To succeed, the moving party bears the burden of establishing both prongs of the summary judgment test.  The nonmoving party may defeat the motion for summary judgment by establishing *either* genuine issues of material fact *or* that the movant is not entitled to judgment as a matter of law.

The moving party "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 91 L. Ed. 2d 265, 106 S. Ct. 2548 (1986) (quoting Fed. R. Civ. P. 56).  The party seeking summary judgment can meet this burden by offering evidence showing no dispute of material fact, or by showing that the nonmoving party's evidence fails to meet some element of its case on which it bears the ultimate burden of proof.  *Celotex*, 477 U.S. at 322-23.  Rule 56, however, does not require "that the moving party support its motion with affidavits or other similar materials *negating* the opponent's claim."  477 U.S. at 323.

When the moving party has met his burden, Rule 56 (e) "requires the nonmoving party to go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324 (quoting Fed. R. Civ. P 56 (e)).  The responding party does not need to present evidence in a form admissible at trial; "however, he may not merely rest on his pleadings."  477 U.S. at 324.  "The plain language

of Rule 56 (c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

In responding to a properly-supported motion for summary judgment, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material fact." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 89 L. Ed. 2d 538, 106 S. Ct. 1348 (1986). If the evidence is "merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 , 91 L. Ed. 2d 202, 106 S. Ct. 2505 (1986) (citations omitted); *accord Spence v. Zimmerman*, 873 F.2d 256 (11th Cir. 1989).

Substantive law determines which facts are material and which are irrelevant. *Anderson*, 477 U.S. at 248. A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." 477 U.S. at 248. Issues of fact are "'genuine' only if a reasonable jury considering the evidence presented could find for the nonmoving party." *Anderson*, 477 U.S. at 249. Material facts affect the outcome of the trial under governing law. 477 U.S. at 248. To determine whether a material fact exists, the court must consider all the evidence in the light most favorable to the nonmoving party. *Anderson*, 477 U.S. at 249; *Patton v. Triad Guar. Ins. Corp.*, 277 F.3d 1294, 1296 (11th Cir. 2002); *Witter v. Delta Airlines, Inc.*, 138 F.3d 1366, 1369 (11th Cir. 1998).

After both parties have addressed the motion for summary judgment, the court must grant the motion *if* no genuine issues of material fact exist *and if* the moving part is entitled

to judgment as a matter of law. Fed. R. Civ. P. 56 (c). In reviewing the evidence submitted, the court must "view the evidence presented through the prism of the substantive evidentiary burden," to determine whether the nonmoving party presented sufficient evidence on which the jury could reasonably find for the nonmovant. *Anderson*, 477 U.S. at 254; *Cottle v. Storer Communication, Inc.*, 849 F.2d 570, 575 (11th Cir. 1998). The court should not weigh the evidence, or make determinations as to the credibility of witnesses because these decisions fall to the provence of the jury. *See Anderson*, 477 U.S. at 255; *Stewart v. Booker T. Washington Ins. Co.*, 232 F.3d 844, 848 (11th Cir. 2000); *Graham v. State Farm Mut. Ins. Co.*, 193 F.3d 1274, 1282 (11th Cir. 1999). Thus, "the evidence of the nonmovant is to be believed and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255. "The nonmovant need not be given the benefit of every inference but only of every reasonable inference." *Graham*, 193 F.3d at 1282 (quoting *Brown v. City of Clewiston*, 848 F.2d 1534, 1540 n. 12 (11th Cir. 1988).

## IV.    Discussion

### A.    The Motion for Partial Summary Judgment

The defendants moved for partial summary judgment on the following claims: negligent or wanton failure to warn; breach of express warranty; and breach of implied warranty of merchantability. The parties agree that the first two claims are due to be dismissed, leaving only the breach of implied warranty of merchantability for the court to address. In that claim, the plaintiff alleges that the defendants "impliedly warranted that the car battery . . . was reasonably fit and suitable for the purposes for which it was intended to be used." Plaintiff claims that the defendants breached this implied warranty because

the battery was "dangerously defective and unsafe" – *i.e.* it exploded.   The defendants maintain that the claim should be dismissed because the UCC is inapplicable to this type of case, the plaintiff lacks contractual privity, and the plaintiff did not give the statutorily required notice.

       1.    **Privity**

      The defendants maintain that the claim should be dismissed because as manufacturers, and not sellers, they have no contractual privity with the plaintiff. Alabama's version of the UCC indicates that the implied warranty applies only to a "*seller* who is a merchant with respect to goods of that kind." Ala. Code Ann. § 7-2-314 (emphasis added). In this case, the defendants were not the sellers of the battery; therefore, no privity exists between them and the plaintiff, and they contend they have no liability.   They rely on *Ex parte General Motors Corp.*, where the Alabama Supreme Court upheld a summary judgment against a   plaintiff who brought suit against a manufacturer when his car repeatedly stalled. 769 So. 2d 903, 910-11 (Ala. 1999).

      The plaintiff contends that the privity requirement applies only where the plaintiff alleges purely economic injuries. Numerous Alabama cases support the plaintiff's position; for example in *Wellcraft Marine, Inc. v. Zarzour*, the court allowed a suit against a manufacturer and noted that "Alabama's version of the UCC § 2-318 has abolished privity requirements in actions involving injuries to natural persons." 577 So. 2d 414, 419 (Ala. 1990) (quoting *State Farm Fire & Cas. Co. v. J.B. Plastics, Inc.*, 505 So. 2d 1223, 1227 (Ala. 1987)); *see also Rhodes v. General Motors Corp.*, 621 So. 2d 945 (Ala. 1993)(discussing economic loss rather than personal injury); *Kidd v. Chevrolet, Inc.*, 613 So. 2d 336, 338 (Ala.

1993) (noting that privity is not required with physical injury); *Johnson v. Anderson Ford*, 686 So. 2d 224, 227 (Ala. 1996) (noting "in cases of strictly economic harm [which is all that was alleged, the absence of contractual privity] is fatal to an implied warranty claim."). *See generally* David G. Owen *et. al*, 1 Madden and Owen on Products Liability § 4:9 (3rd ed. 2000) (noting the current trend in the "fall of the citadel of privity") [hereinafter Madden and Owen]. The plaintiff distinguished the *Ex parte General Motors* case on the grounds that the court did not address privity; rather, it dismissed the case because the plaintiff did not properly plead a claim for breach of an implied warranty. 769 So. 2d at 910. The court agrees with the plaintiff's distinction between *Ex Parte General Motors*, and it finds that because there the court based its decision on improper pleading rather than privity, it is inapplicable to the case at bar.

The lack of privity in this case does not present a barrier to the plaintiff's claim. Alabama precedent in *Wellcraft Marine*, an analogous case, indicates that in cases of physical harm, lack of contractual privity does not bar to an implied warranty claim. Furthermore, the defendants' reliance on *Ex parte General Motors* is insufficient to defeat the claim because the court's decision did not address the privity issue.

Accordingly, the defendants failed to establish entitlement to summary judgment based on lack of privity between the parties.

### 2.    Notice Requirements

The defendants also argue that summary judgment should be granted because the plaintiff did not provide evidence that he made a claim under the written warranty and that the defendants then failed to take action on the  claim.  Alabama's UCC § 7-2-607

establishes that notice of breach of an implied warranty must be affirmatively pleaded in the complaint.    Again, the plaintiff points out that Alabama cases have abolished the notice requirements when a warranty beneficiary has suffered a personal injury. *See Simmons v. Clemco Ind.*, 368 So. 2d 509, 513 (Ala. 1979); *see also Hart v. Yamaha Parts-Distributors, Inc.*, 787 F.2d 1468, 1473 (11th Cir. 1986) (recognizing the holding). Although subsequent cases have reinstated the requirement for cases not involving personal injuries, the *Simmons* holding still controls in cases involving personal injuries. *See Hobbs v. General Motors Corp.*, 134 F. Supp. 2d 1277, 1284 (M.D. Ala. 2001).

In conclusion, the court finds that the defendants failed to establish that lack of written notice defeats the plaintiff's claim for breach of warranty when the plaintiff suffered from physical injuries.

### 3.    UCC or AEMLD

The chief dispute between the parties is whether the UCC's implied warranty of merchantability applies to this case, because Alabama caselaw indicates that the Alabama "extended manufacturer's liability doctrine" (AEMLD) claim precludes an additional UCC claim for breach of implied warranty.  Essentially, the defendants claim that the battery was unavoidably unsafe, and if the product is unavoidably unsafe then the AEMLD applies rather than the UCC. *Casrell v. Altec Ind., Inc.*, 335 So. 2d 128, 132 (Ala. 1976). To summarize the implied warranty of merchantability, Alabama Code § 7-2-314(2)(c) provides that every contract contains an implied warranty that the goods are "fit for the ordinary purposes for which such goods are used." To present a claim under the AEMLD, however, the plaintiff must show he suffered injury by one who sells a product in a defective condition that is

unreasonably dangerous to the plaintiff as the ultimate consumer. *Altec Ind.,* 335 So. 2d at 132.

In *Yarborough v. Sears, Roebuck, & Co.*, the Alabama Supreme Court made a somewhat cryptic distinction between the two causes of action. 628 So. 2d 478, 482-83 (Ala. 1993). There, the plaintiff, who was injured by a kerosene heater, claimed the heater was defective because the manufacturer could have modified the design and made it safer. *Id.* The court held that where the plaintiff brought a claim that a "kerosene heater was unreasonably dangerous and therefore could not be merchantable," such claim was proper under the AEMLD but not the UCC. *Id.* at 483.

The *Yarborough* court based its opinion on the decision in *Shell v. Union Oil*; in that case the court explained the difference between the UCC and tort law:

> [UCC] law, whose statutory language makes no reference to tort law in connection with products liability, concerns itself with the *quality* of the product by establishing standards of merchantability ... [while the tort law] concerns itself with *safety standards* by imposing strict liability upon one who sells an unreasonably dangerous product which causes physical harm. The considerations supporting either of the principles are not affected by the considerations underlying the other, and the standards of quality of a product, with the attendant risk of the bargain, are entirely distinct from its standards of safety, with a possible unreasonable risk of harm. It follows that a violation of the standards of safety, which results in physical harm to the unreasonably dangerous product itself subjects the seller to the tort rule of strict liability.

489 So. 2d 569, 571 (Ala. 1986)(quoting *Mid Continent Aircraft Corp. v. Curry County Spraying Service, Inc.*, 553 S.W.2d 935, 940 (Tex. Civ. App. 1977) (emphasis added)); *see also Ford Motor Co. v. Rice*, 726 So. 2d 626, (Ala. 1998) (noting that the "standards of quality

of a product, with the attendant risk of the bargain, are entirely distinct from its standards of safety, with a possible unreasonable risk of harm.").

Relying primarily on *Yarborough,* defendants argue that a breach of warranty claim cannot lie where a product was not merchantable because a purported defect made it unreasonably dangerous. (Doc. # 79 at p. 5). The defendants suggest that, like the plaintiff in *Yarborough*, the plaintiff in this case claims the battery was not fit for ordinary use because it was in a "dangerously defective and unsafe condition." (Complaint ¶ 7). Thus, the defendants argue, under *Yarborough* the UCC claim should be dismissed.

Plaintiff, by contrast, argues that *Yarborough* does not apply because the AEMLD applies only to products that function as they were intended to function but nevertheless cause injury. (Doc. #87 at p. 10). He argues that *Shell Oil* suggests that doctrines such as the AEMLD are applicable only to products that cannot be made completely safe. This theory is further supported by cases such as *Spain v. Brown & Williamson Tobacco Co.,* where the court found that the UCC did not cover a claim that "cigarettes were unfit for the ordinary purpose for which they are used because they caused cancer, making them unreasonably dangerous and not merchantable." 230 F.3d 1300, 1310 (11th Cir. 2000) (applying Alabama law). Furthermore, unlike a kerosene heater or a cigarette, the plaintiff argues, a car battery is not a product that can cause harm when it functions as it was intended to function, and therefore, the plaintiff argues, he may bring a claim under the UCC.

Despite the plaintiff's arguments, the motion for partial summary judgment is due to be granted. Plaintiff has constructed a plausible theory of strict liability, but it does not

appear to be the one that is wholly endorsed by Alabama law. The Middle District of Alabama also adopted a broad interpretation of *Yarborough*. *See Chase v. Kawasaki Motors Corp., U.S.A.*, 140 F. Supp. 2d 1280, 1288 n.5 (M.D. Ala. 2001). There, the plaintiffs brought suit when their child was injured because their car's brakes failed upon striking a pothole. The court found that where a defect made a product "unreasonably dangerous," the proper claim was under the AEMLD. *Id.* The brakes in *Chase*, like the battery here, do not cause harm when they function as intended. Like the plaintiffs in *Yarborough* and *Chase*, here the plaintiff contends that the battery's defect made it unreasonably dangerous. He is in effect asserting that the manufacturers violated standards of *safety* rather than standards of *quality*. As indicated in the above-quoted passage from *Shell*, the AEMLD was designed to address violations of the standards of safety that result in a possible risk of unreasonable harm rather than the purely commercial standards of mercantile fitness with which the UCC is concerned. *Shell*, 489 So. 2d at 571.

Accordingly, because this cause of action addresses the "unreasonably dangerous" nature of the product, the plaintiff's claim can be presented only under the AEMLD. The motion for partial summary judgment is hereby granted as the defendants met their burden of establishing that the plaintiff's claim is not properly raised under the UCC.

**B.    Motion to Exclude Testimony Under the Doctrine of Spoliation**

The evidentiary motions ask the court to exclude testimony from the plaintiff's expert, Dean Jacobsen, addressing the February 2002, inspection. The battery was subject to two inspections: the first was on January 21-22, 2000, and the second "tear-down"

inspection was on February 13-14, 2002.[1] Shortly after the parties completed the first

inspection, the plaintiff moved to perform the second inspection and the court entered an

order for the inspection to proceed on October 17, 2000. (Doc. #51). The inspection could

not proceed, however, until the court overruled the defendants' objections to preforming

the inspection.  The court entered such an order on November 14, 2001 and the inspection

occurred in February of 2002. (Doc. #55). From the second inspection, the plaintiff's expert

concluded that the battery revealed the presence of a short condition within the battery that

was created by excessive positive plate growth within the battery that occurred over time.

The defendants' experts, John Devitt and Davis Knauer, claim the inspection was unreliable

because excessive plate growth occurred as a result of the plaintiff's improper storage of

the battery between the inspections.[2] The plaintiff argues that the delay was the defendants'

fault; however, the defendants explain correctly that the court's delay in ruling on the motion

was the reason for the time lapse between inspections.

The defendants petitioned the court to exclude testimony from the plaintiff's

expert witness, regarding the 2002 tear-down inspection of the battery at issue because they

claim spoliation has occurred and the condition of the battery in 2002 was not comparable

to the battery in 1999.  The parties disagree on what law the court should apply, whether

either federal or state law allows sanctions to be imposed for negligent spoliation, whether

---

[1] A tear-down inspection is one that involves cutting open the battery and taking it apart so as to understand its internal contents.

[2] The court notes that the defendants challenge the reliability of the testimony because condition of the battery changed between the first and the second inspection. The parties do not contest the plaintiff's expert's *methods* in conducting the tear-down inspection.

exclusion is an appropriate sanction, and whether the defendants were required to plead spoliation as an affirmative defense.

### a.      **Choice of Law**

As a threshold matter, the court notes that under either state or federal law it has considerable discretion in deciding whether a party should be sanctioned. *See Chambers v. Nasco*, 501 U.S. 32, 46 (1991) (recognizing "inherent" power of district courts to issue sanctions and reviewing for "abuse of discretion"); *Joyner v. B&P Pest Control, Inc.*, 2002 WL 31888156, *7 (Ala. Civ. App. 2002) (noting that the standard for review of admission or exclusion of evidence is "abuse of discretion").  Spoliation can occur when a person willfully or negligently disposes of product evidence vital to a litigant's case. J. Chris Cochran, *Spoliation of Evidence in Alabama*, 21 Ala. Trial Lawyer 23 (2001).  In this case, the defendants asked the court to exclude the plaintiff's expert's testimony, though the more common sanction is the issuance of an "adverse inference" jury instruction, which creates the inference that the destroyed evidence was favorable to the other party. *See* Charles W. Gamble, McElroy's Alabama Evidence § 190.05 (5th ed. 1996).

The parties' briefs discuss in some detail whether the Alabama Rules or the Federal Rules of Evidence apply in determining if the evidence should be excluded under the doctrine of spoliation.  The defendants maintain that the court is not obligated to apply Alabama state law, citing a recent Eleventh Circuit case where the court applied federal rules rather than state rules. *See Bashir v. Amtrack*, 119 F.3d 929, 931 (11th Cir. 1997).

In *Bashir*, the Eleventh Circuit provided little explanation for its decision to apply the federal rules to an adverse inference case and stated that it would apply the law "in this

circuit." There, the court refused to find that an adverse inference was merited where the defendant lost a speed recorder tape that was crucial to proving an element of the case. *Id.* at 930-31. The court held that an adverse inference will be drawn from a party's failure to preserve evidence *only* when the absence of that evidence is predicated on bad faith or some culpable level of tampering. *Id.* The court further elaborated that "mere negligence" in losing or destroying the evidence is not sufficient to support an adverse inference. *Id.* The court has not ruled, however, on the culpability level required to support the exclusion of testimony.

Conversely, the plaintiff insists that Alabama caselaw must apply. In support of his argument, he cites *Cooper v. Toshiba Home Tech. Corp.*, 76 F. Supp. 2d 1269, 1274 (M.D. Ala. 1999), where the court concluded that spoliation was a substantive rather than a procedural matter and thus applied Alabama state law pursuant to *Erie R.R. v. Tomkins*, 304 U.S. 64, 78 (1938). *Id.*[3]

Whether federal or state rules apply makes little difference. The Third Circuit examined the matter in a similar case and noted:

> There is some authority suggesting that spoliation of evidence, and sanctions that such spoliation may give rise to are matters appropriately governed by state law. ... there is also authority suggesting that the possible preclusion of evidence in cases such as this is governed by federal law as part of the inherent power of a district court to sanction parties.

---

[3] In the *Cooper* case, the court did not elaborate on its reasoning for concluding that spoliation was a substantive rather than a procedural matter. The court merely stated that the parties agreed state law would apply. *Cooper v. Toshiba Home Tech. Corp.*, 76 F. Supp. 2d 1269, 1274 n.5 (M.D. Ala. 1999) (applying Alabama law).

*Schmid v. Milwaukee Electric Tool Corp.*, 13 F.3d 76, 78 (3rd Cir. 1994). In that case the court applied state law because "[t]he parties have referred to us no case law ... suggesting that the applicable federal and state law are materially different." *Id.* As with *Schmid*, in this case, both federal and state law appear to dictate the same result.[4] In this case the parties are not addressing the applicability of an adverse inference, so no Eleventh Circuit precedent controls. As will be explained in the next section, Alabama courts have addressed the issue in much greater detail than the Eleventh Circuit. Because the application of Alabama caselaw will not run afoul of Eleventh Circuit precedent and provides a clearer analytical framework, the court will apply Alabama law.

### b.    Alabama Spoliation Doctrine

Typically, the doctrine of spoliation involves some element of bad faith. *See Alabama Power Co. v. Murray*, 751 So. 2d 494, 497 (Ala. 1999). Under Alabama law, however, "an attempt to suppress evidence favorable to one's adversary gives rise to an inference of the suppressing party's guilt or culpability." *See* Charles W. Gamble, McElroy's Alabama Evidence § 190.05 at 897 (5th Ed. 1996) (citing *Wal-Mart Stores, Inc. v. Goodman*, 789 So. 2d 166, 176 (Ala. 2000)); *see generally* Ala. R. Evid. 401 (addressing the underlying issue of relevancy). In this case, the defendants have no proof of ill will or bad faith, but contend that the battery's condition before the destructive testing was such that it would have been a favorable piece of evidence to them.

---

[4] Federal courts in other circuits that typically weigh several factors consider the following elements: (1) the degree of fault of the party who failed to preserve the evidence; (2) the degree of prejudice suffered by the opposing party; (3) whether there is a lesser sanction which will avoid substantial unfairness to the opposing party. *Stahl v. Wal-Mart Stores*, 47 F. Supp. 2d 783, 786 n.3 (S.D. Miss. 1998) (quoting *Schmid*, 13 F.3d at 79).

Although the defendants have no proof of intentional spoliation, they maintain that sanctions can also be issued for negligent spoliation. In *Alabama Power Co. v. Murray*, the Alabama Supreme Court held that the trial judge did not abuse his discretion in issuing a spoliation instruction where the power company either accidentally or negligently cleared a surge arrester that was a crucial piece of evidence in the plaintiff's case. 751 So. 2d 494, 497 (Ala. 1999); *see also Capital Chevrolet, Inc. v. Smedley,* 614 So. 2d 439 (Ala. 1993) (trial court abused its discretion in not dismissing plaintiff's claim because plaintiff irretrievably lost all of the relevant evidence); *Baker v. Letica Corp.*, 785 So. 2d 1142 (Ala. Civ. App. 2000) (spoliation instruction appropriate where plaintiff took no action to preserve material evidence); *Iverson v. Xpert Tune*, 553 So. 2d 82, 86 (Ala. 1989) ("If [plaintiff's] conduct amounts to gross negligence, the Court may consider this a valid reason for dismissal.").

The plaintiff contends (1) that the suppression of the evidence must involve a willful act and (2) that excluding the battery and expert testimony from the February 2002, examination is an unnecessarily harsh sanction. The plaintiff maintains that the Alabama Supreme Court has never found that spoliation occurred absent evidence of willful or deliberate conduct. For example, in *Wal-Mart Stores, Inc. v. Goodman*, the Supreme Court explained that "[o]ne can prove spoliation by showing that a party *purposefully* or *wrongfully* destroyed evidence that the party knew supported the interest of the party's opponent." 789 So. 2d 166, 176 (Ala. 2000) (emphasis added); *see also Cincinnati Ins. Co. v. Synergy Gas, Inc.*, 585 So. 2d 822, 827 (Ala. 1991) (justifying dismissal for spoliation on grounds that the plaintiffs "deliberately disposed of the items that were later the subject of [the defendant's] request for production.").

Although the plaintiff maintains that negligence is not grounds for spoliation, the *Alabama Power* case addressed the issue in a dissenting opinion. 751 So. 2d at 402 (See, J., dissenting). There, Justice See took issue with the majority's decision to allow a jury instruction on spoliation on the basis of negligently removing the surge arrester. *Id.* Consequently, Justice See tacitly acknowledged that the case stands for the proposition that negligent destruction of an important piece of evidence can amount to spoliation. Accordingly, Alabama courts appear to group negligent spoliation of evidence with all other types of spoliation for the purpose of issuing sanctions such as excluding testimony or giving the "adverse inference" instruction.

Next, the plaintiff contends that even if the court *could* exclude the testimony, doing so would amount to something of a "drastic" measure. The plaintiff argues that in *Alabama Power*, the Supreme Court upheld a jury instruction, but emphasized that only in the extreme case of *Capitol Chevrolet, Inc. v. Smedley*, 614 So. 2d 439, 442-44 (Ala. 1993), did the court take some action other than issue a jury instruction. In *Capitol Chevrolet*, the court dismissed a case where a defect in a car caused an accident and the auto insurer ordered the sale of the vehicle before the plaintiffs could examine it. *Id.* at 440-41; *see also* J. Chris Cochran, *Spoliation of Evidence in Alabama*, 21 Ala. Trial Lawyer 23 (2001) (noting that the most common, and perhaps the most appropriate, sanction for the spoliation is a jury instruction on the adverse inference).

In this case, excluding the testimony is not an appropriate sanction. The fact that the court's delay in taking action on the motion for destructive testing in 2001 *may* have accounted for some of the spoliation only strengthens the case for not excluding evidence

from the second inspection. Moreover, all the cases cited by the defendants involved scenarios where the party did not have access to the evidence and their experts could not assess its relevance. *See, e.g. Alabama Power v. Murray* 751 So. 2d at 497 (key piece of evidence was removed before experts could assess its condition); *Capitol Chevrolet*, 614 So. 2d at 442-43 (key piece of evidence was ordered destroyed before the lawsuit was filed and experts could inspect it); *Baker v. Letica*, 785 So. 2d at 1148 (evidence was discarded before the other party could examine it). The cases are not applicable to this proceeding because both parties have had access to the battery for the purposes of conducting inspections.

Here, the parties contest whether the plaintiff's expert could make an accurate analysis of the battery in February 2002, because the condition of the battery had changed. The defendants argue that any testimony based on the 2002 battery inspection is inherently unreliable due to the material alteration of the battery based on (1) excessive plate growth; (2) electrolyte fluid spilled out due to improper shipment; and (3) internal components of the battery were displaced due to inversion of the battery and/or the force impacts. (Doc. #81 at p. 10). The plaintiff responded that all of these allegations are based on the allegations of the defendants' own expert, and not on scientific principles any more reliable than their own.

Unlike the Alabama cases where the other parties had little or no access to the evidence and in light of the factors weighed by other federal courts in assessing a spoliation situation, here the alleged spoliation of evidence does not prove that the degree of prejudice to the defendants is so great that the parties should have the "drastic" sanction

of excluding the testimony under the doctrine of spoliation. In light of the substantial disagreement among the experts, each party should be able to share its evidence with the jury and allow it to make ultimate credibility determinations.

### c.    Timeliness

The plaintiff also asserts that the defendants cannot raise spoliation because they did not plead it as an affirmative defense. In support of his argument, the plaintiff does not cite any caselaw or rules. Absent any analytical assistance, no reason merits finding that such a requirement exists, particularly because the defendants allege that the battery was in a different condition when the lawsuit was filed and its subsequent alleged "destruction" has occurred over time throughout the case.

### 2.    Exclusion of Expert Testimony Pursuant to *Daubert*

As with the doctrine of spoliation, the parties dispute how the court should apply the Federal Rules of Evidence in determining whether the plaintiff's expert can testify regarding the 2002 inspection and whether, under either Alabama or federal law, the testimony is, in fact, admissible.

### a.    Admissibility or Competency

As an alternative to dismissing the plaintiff's expert's testimony under the doctrine of spoliation, the defendants contend that a hearing is merited on whether the plaintiff's expert may testify pursuant to the Supreme Court's decision in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). Once again, the court notes that it has broad discretion in determining whether to admit or exclude the testimony. *See Allison v. McGhan*, 184 F.3d 1300, 1306 (11th Cir. 1999) (citing *General Elec. Co. v. Joiner*, 522 U.S.

136, 138-39 (1997)) (noting that the standard of review is abuse of discretion even if the ruling is outcome determinative).   The *Daubert* holding is restated in Rule 702 of the Federal Rules of Evidence and provides a framework for determining whether an expert witness can testify. At first blush, it appears that the parties dispute whether the Federal Rules of Evidence or the Alabama Rules of Evidence apply regarding the expert testimony. Upon further review of the cases, however, the dispute is actually whether the evidence is governed by the Federal Rule 702 regarding the admissibility of the testimony, or Federal Rule 601 which applies when determining whether the witness is competent to testify.

The plaintiff claims that the issue is whether Jacobsen is competent to testify, and therefore Rule 601 applies.  Under Rule 601, state law determines competency in diversity cases.  More specifically, the rule states that "in civil actions and proceedings, with respect to an element of a claim or a defense as to which State law supplies the rule of decision, the competency of a witness shall be determined in accordance with state law."   *See R.A. Barton v. American Red Cross*, 829 F. Supp. 1290 (M.D. Ala. 1993); *C.D. Lott v. C&W Trucking, Inc.*, 15 F. Supp. 2d 1167 (M.D. Ala. 1997).

In *Barton*, the plaintiff contracted the AIDS virus from a blood transfusion.  To prove her case, she hired an expert and maintained that, although state rules of evidence would not allow the expert to testify, the competency of a witness was a procedural question and, thus, under the *Erie* doctrine, federal rules applied. 829 F. Supp. at 1299.  The district court disagreed and held that under Rule 601, where "Alabama supplies the rule of decision or substantive law for the issues ... before this court–that is, whether the Red Cross and Dr.

McGowan are liable for medical malpractice–Alabama law also governs the competency of witnesses to testify as experts regarding those issues." *Id.*

Likewise, in *C.D. Lott*, Judge Thompson reiterated his earlier holding in *Barton* and held that, where the court sits in diversity Alabama state law principles would decide issues of competency. *C.D. Lott*, 15 F. Supp. 2d at 1169. Then he used the issue of competency as a segue into determining questions regarding whether the underlying testimony was admissible. *Id.* at 1171. Because the court used Alabama evidentiary rules to determine whether the witness was competent, it also used Alabama principles to determine the testimony's admissibility.

The defendants argue that the issue is one of admissibility and that the court should not follow precedent from the Middle District of Alabama when the Eleventh Circuit has provided ample precedent for following the Federal Rules of Evidence. *See Allison v. McGhan*, 184 F.3d 1300 (11th Cir. 1999) (applying Georgia substantive law); *Michigan Millers Mut. Ins. Corp. v. Benfield*, 140 F.3d 915 (11th Cir. 1998) (applying Florida substantive law); *Garwood v. International Paper Co.*, 666 F.2d 217 (5th Cir. 1982) (applying Florida substantive law). The defendants posit that when the question is one of *admissibility*, the courts will apply Rule 702 and will decide the issue wholly on federal evidentiary principles*.*

In *Allison*, the court addressed substantive issues of state law but applied the *Daubert* test when evaluating whether a medical expert's testimony was admissible regarding issues of causation in a silicone breast implant case. 184 F.3d at 1310-12. Also in *Michigan Millers*, the court applied the *Daubert* rubric to address whether a fire expert's

testimony was admissible. 140 F.3d at 919-20. Finally, in *Garwood*, the court applied the *Daubert* factors when the plaintiff attempted to prove its expert testimony was admissible on the issue of contributory negligence. 666 F.2d at 222-23. There, the court specifically noted that "[e]ven in a diversity case, the Federal Rules of Evidence govern the admissibility of evidence. ... [t]hus, Garwood's extensive reliance on Florida cases ...[concerning admissibility] is misplaced." *Id.*

Whether the matter should be addressed by state law or federal law is open for debate. Clearly, the Middle District of Alabama has opted for the competency/admissibility approach using Rule 601 and applying state evidentiary rules to determine the expert witnesses's competency and the admissibility of their testimony. *See also Bowden v. Wal-Mart Stores Inc.,* 2001 WL 617521 (M.D. Ala. 2001) (holding that Alabama evidentiary rules applied to determine issues of witness competency and federal rules applied for questions of personal knowledge regarding expert testimony). In the end, whether the court approaches the issue from a competency stance or an admissibility stance makes little difference, for the result is the same under Alabama or federal law.

### b.   Application of *Daubert*

Under the *Daubert* test as applied by the Eleventh Circuit in *City of Tuscaloosa v. Harcos Chemicals, Inc.*, expert testimony may be admitted if (1) the expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in *Daubert*; and (3) the testimony assists the trier of fact. 158 F.3d 548, 563 (11th Cir. 1998). In determining whether the evidence should be admitted, the trial

judge is assigned the role of the "gatekeeper," which "assign[s] to the trial judge the task of ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." *See United States v. Paul*, 175 F.3d 906, 910 (11th Cir. 1999) (quoting *Daubert*, 509 U.S. at 594); *see also Kuhmo Tire Co. Ltd v. Carmichael*, 526 U.S. 137, 147-48 (1999) (indicating that the *Daubert* test incorporates all types of specialized knowledge). The inquiry is a "flexible one," which must be adapted to the facts at hand. *Kuhmo Tire*, 526 U.S. at 152.

The same analysis addressed *supra* for the spoliation claim is applicable to this issue as well. As with the conditions for spoliation, the determination is not whether the methodology is sound, so as to implicate *Daubert*, but whether the condition of the battery in 2002 was a reliable indicator of what might have caused the accident. Each side has presented experts' opinions as to whether the battery was a reliable indicator. The defendants' experts testified that the tear-down inspection made it impossible for them to prove the occurrence of measurable plate growth and in turn to discount the plaintiff's expert's theory. Yet the record shows that they have previously testified after tear-down inspections and can testify using a reconstructed battery. (Doc. #53 at p. 76). The court finds that: (1) the plaintiff's expert is clearly qualified to testify competently regarding the condition of the battery; (2) the methodology by which he reaches his conclusions is sufficiently reliable, such that a jury can decide whether it finds the plaintiff's or the defendants' experts more reliable; and (3) such testimony will assist the trier of fact because it will help prove whether the battery was defective. *Harcos Chemicals*, 175 F.3d at 910.

Accordingly, the testimony should not be excluded because each side can present experts who have seen the battery and can testify such that a jury could decide which expert it finds more credible.

### c. Application of Alabama State Law Rules

Under Alabama law: "If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise." Ala. R. Evid., Rule 702. Alabama has rejected the *Daubert* standard and continues to adhere to the *Frye* test for all scientific evidence except DNA evidence. *See Southern Energy Homes, Inc. v. Washington*, 774 So. 2d 505, 517 n.5 (Ala. 2000); *see also* Alma Kelley McLeod, *Is Frye Dying or is* Daubert *Doomed? Determining the Standard of Admissibility of Scientific Evidence in Alabama Courts*, 51 Ala. L. Rev. 883 (2000) (discussing the continued relevancy of the *Frye* test). The *Frye* test allows expert testimony where the evidence is both relevant and helpful to the trier of fact and the scientific technique or principle is generally accepted in the scientific community. *Southern Energy*, 774 So. 2d at 517. The testimony that the plaintiff's expert would present clearly meets the *Frye* test as it is both relevant and helpful in determining what could have caused the accident.

The parties have not addressed any meaningful distinction between the Alabama and federal tests and, as the particular methodology of the two experts is not at issue, the end result is likely the same as the result discussed in *Daubert*. Under both tests, the testimony should not be excluded because the defendants have not established that the plaintiff's

expert's opinion is not qualified to give an opinion, that his opinion is grounded upon tests that were performed according to unacceptable scientific principles, or that it would not assist the trier of fact. The motion for exclusion of the testimony will be denied; Defendants' alternative request for a hearing will be denied as unnecessary.

## V.   Conclusion.

The court will enter an appropriate order in conformity with this memorandum of opinion.

Done, this 15th of April, 2003.

Karon O. Bowdre
United States District Judge